IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH BENNY,<br>            Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA,<br>DEPARTMENT OF CORRECTIONS,<br>STATE CORRECTIONAL INSTITUTION<br>AT SOMERSET,<br>            Defendant. | Civil Action No. 3: 03-127J |

## MEMORANDUM OPINION AND ORDER

GIBSON, J.

This case comes before the Court on the Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Somerset's (hereinafter "Defendant") Motion for Summary Judgment (Document No. 20). Specifically, pursuant to Federal Rule of Civil Procedure 56 the Defendant has moved to dismiss Count III (sexual discrimination claim) of Judith Benny's (hereinafter "Plaintiff") Complaint arguing, *inter alia*, that no genuine issues as to any material facts exist in the case *sub judice*. (Document No. 20). The Defendant's Motion for Summary Judgment will be granted as to Count III of the Plaintiff's Complaint for the following reasons.

## JURISDICTION

Jurisdiction of the above-captioned civil action is proper in the United States District Court for the Western District of Pennsylvania in that the Plaintiff's cause of action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000(e), *et. seq.* Jurisdiction is invoked pursuant to 28 U.S.C.S. § 1343(4) and 42 U.S.C.S. § 2000(e)-5(f), and a right to sue letter was issued by the U.S. Department of Justice on March 4, 2003 and received on March 10, 2003.

Venue in this Court for the case *sub judice* is proper pursuant to 28 U.S.C.S. § 1391(b), because the claim arose in this judicial district, and pursuant to 28 U.S.C.S. § 2000(e)-5(f)(3), as the alleged unlawful employment practice was committed in this judicial district.

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence of record, as uncontroverted or otherwise taken in the light most favorable to the Plaintiff is as follows:

Beginning on or about February 1998, the Plaintiff began her employment with the Defendant as a food service instructor.[1] (Document No. 25). During her employment, the Plaintiff avers that she has performed her duties in a satisfactory manner. *Id.* However, the Plaintiff alleges that at various times she has been subjected to unwelcome sexual overtures by male members of the Defendant's management. *Id.* Additionally, the Plaintiff claims that she has "been subjected to a consistent and pervasive pattern of discriminatory and oppressive treatment at the hand of Defendant's agents because she is a woman." *Id.*

Plaintiff asserts that she complained of the sexual discrimination to superior officials of Defendant. *Id.* Indeed, the Plaintiff argues that the Defendant was aware of the behaviors of male management officials but failed to take action and condoned the offensive behavior. *Id.* The offensive behavior exhibited by the male employees were intimidating to the Plaintiff, and she argues that the behavior would have been offensive to any reasonable woman under the same circumstances. *Id.*

---

[1] The Defendant opines in the Partial Answer to Complaint (Document No. 5) that the Plaintiff "has been employed by the Defendant as a Corrections Food Service Instructor at SCI-Somerset" since "May 5, 1997." (Document No. 5, ¶ 10). Noting the approximate dates, the Court acknowledges that the Plaintiff was employed by the Defendant from 1997 until the date of termination in Spring of 2004. (*See* Document No. 19, "In April of 2004, [Plaintiff] transferred to the Food Service Department at the [SCI-Laurel Highlands].")

The uncontested offensive behavior documented by the Plaintiff and brought to the attention of her superiors are the following instances:

(1) 12/26/97, [a male co-worker] yelled 'you don't give a F*ck about no one but your own F*cking self' . . . [and] slammed the door closed[;]
(2) On 05/02/98 I[t] was stated who was I blowing again in reference to the overtime issue[;]
(3) On 05/08/98 'The remark was made who's dick am I blowing to get all the overtime'[;]
(4) On July 25 at 2:15 Sat., 'They always complain about patting people down. They always say there are to [sic] many women in here.'
(5) [A male co-worker] made bets with other male employees regarding Plaintiff and sexual acts.

(Document No. 25, Exhibit B, pp. 5-6). The Plaintiff argues that these instances in conjunction with the alleged pattern of conduct displayed by the Defendant set forth a clear pattern of sexual discrimination. (Document No. 25). In fact, according to the Plaintiff, the entire record in the case *sub judice* is replete with examples of a continuing pattern of sexual discrimination. *Id.* In particular the Plaintiff alleges that a male co-worker, Donald Lepley, displayed egregious conduct toward the Plaintiff. *Id.*

**STANDARD**

The Court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S.Ct.

2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and would support a favorable jury finding. *Id.* at 321 n. 3, 477 U.S. 317, 106 S.Ct. 2548, 91 LEd.2d 265 (quoting Fed.R.Civ.P. 56(e)). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts, presenting affirmative evidence showing that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 256-57, 106 S.Ct. 2505, 91 L.Ed.2d 202.

The parties must also adhere to the *McDonnell Douglas* scheme of shifting burdens of production, which controls the analysis of individual disparate treatment claims brought under Title VII and the PHRA. *See generally McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Specifically, disparate treatment claims follow a well-established three-step "burden-shifting" approach. *See McDonnell Douglas Corp. v. Green, supra.*

Initially, a non-movant, generally the plaintiff, must establish a prima facie case of discrimination or retaliation. Then, the movant or defendant must rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory, non-retaliatory reason for the action taken. *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 432 (3d Cir. 2001). If a

defendant successfully meets this burden in a discrimination or retaliation case, then the burden of production shifts back to the plaintiff to present evidence of pretext, or show that the discrimination played a role in the defendant's decision-making, and the discrimination had a determinative effect on the outcome. *Weston*, 251 F.3d at 432. Noting the inimical consequences of discrimination in the workplace, the Third Circuit cautions district courts against granting summary judgment to an employer when its intent is at issue, particularly in discrimination cases. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d Cir. 2000).

**TITLE VII CLAIMS**

Pursuant to the statutory language of Title VII, it is unlawful for any employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A sexual discrimination claim under Title VII must establish that the sexual harassment was either so pervasive as to create a hostile work environment and change the conditions of employment, or if the sexual harassment constituted a *quid pro quo* sexual discrimination. In the case *sub judice*, the Plaintiff alleges that the Defendant committed sexual discrimination and violated Title VII by creating a hostile work environment.

**Hostile Work Environment Sexual Harassment**

To be actionable as a Title VII hostile work environment sexual harassment claim, the Supreme Court has made clear that although the statute mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to economic or tangible discrimination and that it covers more than 'terms' and 'conditions' in the narrow contractual sense." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662

(1998)(internal citations and quotations omitted). Indeed, sexual harassment so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment" violates Title VII as well. *Clark County School District v. Breedon*, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(citing *Faragher*, 524 US. at 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). This standard requires an objectively hostile or abusive environment such that a reasonable person would find it hostile or abusive. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The victim's subjective perception that the environment was abusive is also a requisite element of a hostile work environment sexual harassment claim. *Id.*

In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit set forth a four part test for determining whether a sexually hostile work environment exists. A plaintiff must prove that (1) the employee suffered an intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the employee; and (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position. *Andrews*, 895 F.2d at 1482. Furthermore, the Third Circuit directs that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Id.* at 1484. Accordingly, district courts assess a hostile work environment by observing "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662. Based upon the record in the case *sub judice*, the Court determines that the Plaintiff

has failed to set forth a genuine issue of material fact on her claim of a sexually hostile work environment in that she has failed to establish a prima facie case of discrimination.

**1. Intentional Discrimination Because of Sex**

In order to constitute intentional discrimination because of sex, cases that involve "sexual propositions, innuendo, pornographic materials, or sexual derogatory language" are recognized as impermissible discrimination as a matter of course. *Andrews*, 895, F.2d at 1482 n. 3. However, offensive discriminatory conduct does not necessarily require "sexual overtones in every instance or that each incident be sufficiently severe to detrimentally affect a female employee." *Andrews*, 895 F.2d at 1485 (quoted in *Hartman v. Sterling, Inc.* 2003 WL 22358548, *4 (E.D. Pa. 2003)). What is required is "a showing that the offender's behavior was . . . based on a protected category." *Hartman*, 2003 WL at *4 (quoting *Abramson v. William Paterson College of New Jersey*, 260 F.3d 277, 278 (3d Cir. 2001)). Consequently, "because 'discrimination is often masked in more subtle forms, it is often difficult to discern discriminatory animus'"; therefore, "'with respect to certain conduct, the intent to discriminate can be inferred.'" *Id*.

In the case *sub judice*, the Plaintiff offers into evidence self-documented instances of the alleged hostile work environment often facilitated by disagreements between the Plaintiff and Donald Lepley. (Document No. 26, Exhibit A). The five incidents of sexual harassment listed above constitute the core of Plaintiff's sexual discrimination claim. Based upon the sexually derogatory language included in at least two of the incidents above, wherein it is alleged that the Plaintiff performed sexual favors in order to receive overtime work, the Court determines that the Plaintiff has provided sufficient evidence that the Defendant's conduct was based on a protected category.

2. **Pervasiveness and Regularity of Conduct**

A sexual harassment claim is actionable if it is established that the "workplace is 'permeated with discriminatory intimation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hartman*, 2003 WL at *5 (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. 367, 126 L.Ed.2d 295). In order to satisfy this element of a prima facie claim of sexual discrimination, a plaintiff must show that the "incidents of harassment occur either in concert or with regularity." *Hartman*, 2003 WL at *5 (quoting *Andrews*, 895 F.2d at 1484)(quotations and citations omitted).

The Court also observes that the standard applied by the Third Circuit to determine whether "harassment is pervasive and regular" appears to differ from the Supreme Court's requirement as defined in *Harris, supra*, and later in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Specifically, the Third Circuit's formulation of this prong as defined in *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) is unlike the Supreme Court's standard in *Harris*, and the difference has been analyzed by the Third Circuit in *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 277 n. 6 (2001) as follows:

> [The Supreme Court] required that the plaintiff demonstrate that the harassment was 'severe or pervasive.' *Id*. On at least one previous occasion, we have also referred to the standard as severe or pervasive. *See Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667 (3d Cir.1999) (applying Title VII hostile work environment test to ADA harassment claim and holding that plaintiff failed to 'demonstrate[ ] that the asserted harassment was pervasive or severe enough to meet the Harris standard.'). In the instant case, Abramson asserts a claim that the discrimination was pervasive and regular, thus fulfilling both the *Andrews* and the *Harris* tests. Therefore, we adopt the approach taken in *Bouton*. We note that the distinction between 'severe or pervasive' and 'pervasive and regular' may be important, but 'do not find it necessary to resolve whether [the difference in language] was inadvertent.' *Bouton* [*v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 n. 2 (3d Cir.1994)].

*Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 277 n. 6 (2001); *see also Dougherty v. Henderson*, 155 F.Supp.2d 269 (E.D. Pa. 2001); *Ogden v. Keystone Residence*, 226 F.Supp.2d 588 (M.D. Pa. 2002). Accordingly, the Court in the case *sub judice* turns its attention to the Plaintiff's allegation of sexual harassment as set forth in Count III.

The Court observes that the Plaintiff fails to assert that the alleged unwelcome sexual conduct occurs with any specific frequency or in any regular pattern. (Document No. 1, ¶¶ 32-41). In particular, the Plaintiff claims that "at various times [she was] subjected to unwelcome sexual overtures and comments by male members of Defendant's management." *Id.* at ¶ 33. However, during the approximate six years that Plaintiff was employed by the Defendant, Plaintiff cites merely two occasions of alleged sexual harassment. (*See* Document No. 25, Exhibit B, pp. 5-6, wherein the Plaintiff indicates two alleged incidents on May 2, 1998 and May 8, 1998.)

The Court also observes that while Plaintiff cites two incidents of inappropriate language used by the Defendant regarding the Plaintiff's overtime employment, the Plaintiff fails to cite the frequency of these comments. In other words, the Plaintiff does not provide any indication that such comments occurred on other occasions. Indeed, there is no evidence in the record that any alleged sexual harassment by the Defendant could be characterized as pervasive and regular and/or severe and pervasive. *See Andrews, supra; Bouton*, supra; *Abramson, supra*. Consequently, the Court determines that a jury could not reasonably find that the Defendant's alleged sexual harassment was pervasive and regular.

Accordingly, the Court determines that construing the record in the light most favorable to the Plaintiff, the Plaintiff has not met her burden with regard to the second element of her prima facie sexual discrimination claim. Specifically, the record does not support Plaintiff's claim that the Defendant engaged in pervasive and regular conduct such that the work environment was charged with sexual harassment. In fact, the documented instances included in the record merely evidence that Plaintiff and Donald Lepley did not agree as to how their duties and responsibilities were to be effectively carried out. The two documented instances where Donald Lepley did communicate overt sexual references do not amount to conduct that permeated the work environment with sexual discrimination. Thus, the Court determines that the Plaintiff has failed to set forth a genuine issue of material fact regarding a sexual discrimination claim, and Defendant's Motion for Summary Judgment is granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH BENNY,<br>   Plaintiff,<br><br>   v.<br><br>COMMONWEALTH OF PENNSYLVANIA,<br>DEPARTMENT OF CORRECTIONS,<br>STATE CORRECTIONAL INSTITUTION<br>AT SOMERSET,<br>   Defendant. | Civil Action No. 3: 03-127J |

### ORDER

AND NOW, this 21st day of November, 2005 upon consideration of Defendant's Motion for Summary Judgment (Document No. 20), Plaintiff's Response to Motion for Summary Judgment (Document No. 24), Federal Rule of Civil Procedure 56, and based upon the record in the case *sub judice*, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is granted.

**IT IS FURTHER ORDERED THAT** Judgment is hereby entered in favor of the Defendant, Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Somerset, and against the Plaintiff, Judith Benny.

BY THE COURT:

*[signature]*

UNITED STATES DISTRICT JUDGE
The Honorable Kim R. Gibson

cc: All counsel of record.